Love & Brother *v.* Captain and Owners of Steamboat Mont-
gomery.

This was an action for damage to plaintiffs' store, resulting from the defendants' steamer having
drifted against and ruined it. *Held :* In cases of this kind, it is not usual for other courts than
those of admiralty, to relieve either party where both have been guilty of a want of proper care.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
Thomas, for plaintiffs. *Wolfe & Singleton,* for defendant.

Spofford, J. The steamboat Montgomery, in a season of high water, effected
a landing at the town of New Carthage, in the parish of Madison. As the
water was over the bank, she made fast to a flatboat, a short distance above a
storehouse belonging to the plaintiffs. - There were trees close at hand, to which
she might as easily have fastened her line. There being a strong current, the
steamboat and flat began to drift down stream and it was evident that the
rope, by which the flat was tied to a tree, was about giving way. Some one
on the flat then cast off the line of the steamboat, and she swung against the
plaintiffs' storehouse, with such force as to knock it from the pillars upon which
it stood above the overflow, and convert it into a ruin.

The plaintiffs insist that the owners of the steamboat should indemnify them
for the loss of their house, and the damage done to a lot of hardware, crocke-
ry, drugs and merchandise, stored therein.

There was a judgment for the defendants in the court below.

The appellants contend, that as the storehouse had no power of locomotion,
the burden is on the defendants to prove beyond a reasonable doubt, that the
collision was the result of inevitable accident. This would be a correct view
of the law in a case where the complainants acted with proper caution them-
selves or, at least, contributed nothing to occasion the loss complained of.

But here the plaintiffs owned the flatboat. They moored her at the spot
where the steamboat found her, about forty yards above their store, in a swift
current, or between two cross currents. They moored her there expressly for
a steamboat landing, and, no doubt, made the usual profits out of the invest-
ment. Moreover, a passenger, the only witness who gives any intelligible ex-
planation of the catastrophe, and who was examined originally on behalf of
the plaintiffs, but whose evidence was offered by the defendants, says that he
believes it was Mr. *Love* himself (one of the plaintiffs) who cast off the
steamer's line from the flat, to which it had been fastened. It does not appear
that he remonstrated against her being thus fastened, or requested the officers
of the boat to make fast to any other object. So the plaintiffs themselves are
in fault. They should have moved their temporary landing further away from
their house, or made it more secure, or, being present, should at least have
warned the officers of the Montgomery of its insecurity.

It may be true that the defendants were also in fault.

But, in cases of this kind, it is not usual for other courts than those of ad-
miralty jurisdiction, to relieve either party where both have been guilty of a
want of proper care. *Vanderplank* v. *Miller,* 1 Moody & Malkin, 171. 3 Kent's
Com. p. 231. *Myers* v. *Perry,* 1 Ann. 374. *Carlisle* v. *Holton,* 3 Ann. 48.

The judgment is therefore affirmed, with costs.